

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00073-CV

_____

IN RE: THE COMMITMENT OF MARK DAVID MCCAFFERTY

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. CDC1-S-14211-19

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Mark David McCafferty appeals from a final judgment of civil commitment. In his first issue, McCafferty claims that the trial court erred by prohibiting him from asking one of the State's experts whether he agreed that the records he reviewed demonstrated that McCafferty did not commit a sexual-assault offense for which he is convicted. In his second and third issues, he challenges the legal and factual sufficiency of the evidence to support the jury's conclusion that he suffers from a "behavioral abnormality" that makes him likely to engage in a predatory act of sexual violence. Finally, in his last issue, McCafferty claims that the evidence is legally insufficient to support the jury's finding that he is a repeat sexually violent offender. We hold that these challenges are without merit, and we affirm the judgment of the trial court.

## I. BACKGROUND

In April 2019, the State filed a petition to civilly commit McCafferty as a sexually violent predator. McCafferty's criminal sentence discharge date was set for December 6, 2020. The State alleged that McCafferty had been convicted of two sexually violent offenses; sexual assault and indecency with a child.[1] According to the State, the first offense occurred in March 1990 and the second occurred in September 2012. The State's experts determined that McCafferty suffers from a behavioral abnormality, in

---

[1]McCafferty was convicted of another sexual offense, solicitation of a child, in 1993. The State, however, did not include that offense in its petition to civilly commit McCafferty.

accordance with Section 841.023(a) of the Texas Health and Safety Code. The State asked the trier of fact to find that McCafferty is a sexually violent predator and to civilly commit him under the sexually violent predator statute. *See* Tex. Health & Safety Code Ann. §§ 841.001–.153.

Three witnesses testified at the jury trial: the State's experts—Dr. Randall Price and Dr. Michael Arambula—as well as McCafferty. Both Price and Arambula opined that McCafferty has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Price based his opinion on McCafferty's history of sexually deviant behavior, variety of victims, denial of committing his offenses, and his antisocial traits and features. Arambula's opinion that McCafferty has a behavioral abnormality is based on McCafferty's history of sexual offenses, which he committed over decades, and the intervening punishment McCafferty received which appeared to have no effect on his offending. For his part, McCafferty denied committing the 1990 sexual assault. As to the 2012 offense, McCafferty testified that the victim in that case, a young boy, misconstrued his falling into the boy by accident as an intentional touching of the boy's genitals.

The jury found beyond a reasonable doubt that McCafferty is a sexually violent predator. The trial court ordered McCafferty committed until he is no longer likely to engage in predatory acts. This appeal followed.

## II.    WITNESS TESTIMONY

### A.    Expert testimony

The State called two expert witnesses: Dr. Price, a forensic psychologist, and Dr. Arambula, a medical doctor. Dr. Price is licensed to practice psychology in Texas, Oklahoma, and Arkansas. Additionally, he is licensed a sex-offender treatment provider in Texas. He is also board certified in forensic psychology and neuropsychology. Dr. Price utilized his expertise as a forensic psychologist while he worked on this case and during his examination of McCafferty. Dr. Price testified that forensic psychology is a legitimate field of expertise and that this testimony properly relied on the principles involved in forensic psychology.

Dr. Arambula is licensed to practice medicine and pharmacy in the State of Texas. Governor Perry appointed Dr. Arambula as president of the Texas Medical Board. Dr. Arambula has been practicing forensic psychiatry for the past thirty years, and he is board certified in both general and forensic psychiatry. Dr. Arambula's testimony in this case was within the scope of forensic psychiatry

The experts were retained to separately evaluate McCafferty and opine whether he has a behavioral abnormality, as defined in the Texas Health and Safety Code. Dr. Price has performed about 200 behavioral-abnormality evaluations since 2002. Dr. Arambula has performed close to 170 behavioral-abnormality evaluations in the past fifteen years.

Dr. Price explained that there is no one test that would allow him to determine if McCafferty suffers from a behavioral abnormality. Consequently, Dr. Price's opinion is based on "empirical, quantitative research done on sex offenders and what the risk factors for reoffending are, and it utilizes quantitative information at least for a baseline for an opinion about the risks that a person poses"; his opinion is not subjective.

As a part of their evaluations of McCafferty, both doctors testified that they reviewed hundreds of pages of records pertaining to McCafferty—including his law enforcement records, court records, prior psychological evaluations, deposition, medical records, and prison records. The records that the two doctors reviewed in forming their opinions are the same types of records that other experts rely upon when performing behavioral-abnormality evaluations.

During their testimony, the two doctors discussed McCafferty's history of sexual offenses. McCafferty committed his first sexual offense in 1990 when he was thirty years old. The police records in that case reflect that on the day of the sexual assault, a young woman was carrying supplies upstairs to a tanning salon where she was employed. At the same time, McCafferty was walking down the  salon's stairs. As the two neared one another, McCafferty exposed his penis to the woman. And when the two were close enough to touch, McCafferty grabbed the woman's crotch and inserted his finger into her vagina. The woman fled the tanning salon and called the police. Days later, the woman identified McCafferty in a photo lineup as the man who had assaulted

her. McCafferty subsequently pled nolo contendere to the charge of sexual assault and was sentenced to two years in prison.

McCafferty's second sexual offense, solicitation of a child, occurred in 1993, three years after he committed his first offense. The records reviewed by the doctors reflect that McCafferty approached a boy younger than fourteen years of age and passed him a handwritten note and a picture of a penis. The note proposed that McCafferty perform oral sex on the boy. McCafferty pled guilty to this offense and was sentenced to time in prison.

McCafferty's third sexual offense, indecency with a child by sexual contact, occurred in 2012. McCafferty was fifty-two years old at the time. According to the records that the doctors reviewed, McCafferty followed a boy as he walked down the aisle of a CVS drugstore. At some point, McCafferty grabbed the boy's butt and attempted to penetrate the boy's anus with his finger. After the boy walked away from McCafferty, McCafferty followed the boy to another part of the store and grabbed his genitals through his clothes. The boy immediately reported the offenses to his mother who was also in the drugstore. McCafferty pled guilty to this offense and was sentenced to seven years in prison.

The doctors also testified about their respective interviews of McCafferty. Price's interview of McCafferty lasted three-and-a-half hours. Arambula's interview of McCafferty lasted two hours. Dr. Price's interview of McCafferty was conducted in accordance with his training as a forensic psychologist and in accordance with the

accepted standards in the field of forensic psychology. Dr. Arambula's interview of McCafferty was performed in accordance with his training as a forensic psychiatrist.

The doctors diagnosed McCafferty with psychological disorders. Dr. Price diagnosed McCafferty with an other specified paraphilic disorder. Specifically, this means that McCafferty suffers from a disorder that does not fall within any of the specified disorders listed in the Diagnostic and Statistical Manual of Mental Disorders. Paraphilic disorder is an acquired or congenital disorder that can affect a person's emotional or volitional capacities. Dr. Arambula also diagnosed McCafferty with an unspecified paraphilic disorder. The doctors stated that McCafferty's paraphilic disorder has affected his emotional or volitional capacity. Additionally, both doctors diagnosed McCafferty as sexually deviant based on his history of engaging in abnormal sexual behavior. Finally, both doctors diagnosed McCafferty with an alcohol-use disorder and a stimulant-use disorder. The doctors agreed that although drugs and alcohol are not a problem for McCafferty now, if he were to begin using again, his risk to sexually reoffend would increase.

Neither doctor diagnosed McCafferty as having an antisocial personality disorder, but Dr. Price noted that McCafferty has traits and features of a personality disorder. For example, McCafferty has a history of committing sexual and non-sexual offenses. Dr. Price believes that McCafferty's criminal history demonstrates a lack of volitional capacity to follow the law. Moreover, as it relates to his opinion in this

proceeding, Dr. Price opined that McCafferty's propensity to break society's rules and laws places him at greater risk to commit sexually violent offenses.

As another piece of their analyses of McCafferty, the doctors identified McCafferty's risk and protective factors as they relate to his risk to commit future sexual offenses. The doctors explained that one of the most significant risk factors indicating a person is at risk to sexually reoffend is the person's diagnosis as sexually deviant. The doctors agreed that McCafferty's history of sexual offenses demonstrates he is sexually deviant.

Dr. Price discussed a number of additional risk factors that increase McCafferty's risk to reoffend; these include McCafferty's chronic sexual offending over a span of years; his never having lived with an intimate partner for two years; his victimization of strangers and males; his additional nonsexual criminal history; his inability to successfully complete sex-offender treatment; his reoffending while on probation; his offending in public; and most importantly, his extreme minimization or denial of committing his sexual offenses.

Dr. Arambula was also concerned about McCafferty's denial and minimization of his sexual offenses. And while Dr. Arambula agreed that there is a dispute among professionals about whether minimization and denial of prior sexual offenses are risk factors to reoffend, he stated that there is no doubt that denial and minimization are—at a minimum—roadblocks to successfully completing a sex-offender treatment

8

program. This is significant because the successful completion of a sex-offender treatment program reduces the risk of committing future sex offenses.[2]

As it relates to McCafferty, Dr. Arambula explained that McCafferty does not understand why he sexually offended and does not acknowledge his sexual deviance. The doctor further stated that McCafferty cannot begin to learn to manage his problems until he acknowledges them. Similarly, Dr. Price testified that McCafferty's current level of denial reduces his chance of completing sex-offender treatment and that if he insisted in his denials, treatment might not even be possible.

The doctors also identified protective factors that reduce McCafferty's risk of reoffending. McCafferty's strongest protective factor is his age, fifty-nine. That protective factor, however, is somewhat diminished by the fact that McCafferty' committed his last sexual offense at the age of fifty-two. Another protective factor is McCafferty's poor medical health—which limits or reduces his sex drive. Other protective facts include a history of stable employment, family support, his good behavior in prison, and his plans for himself upon release from prison. In Dr. Price's professional opinion, McCafferty's risk factors outweigh his protective factors.

---

[2]McCafferty admits that he learned nothing from his sex-offender treatment program. And in fact, McCafferty reoffended after completing his two-year sex-offender treatment program.

Additionally, as part of his evaluation, Dr. Price administered and scored two tests: the PCL-R and the Static-99R.[3] Although the tests alone cannot determine if a person suffers from a behavioral abnormality, the test results do provide information that assists psychologists in determining if a person suffers from a behavioral abnormality. The PCL-R test measures the degree to which a person is a psychopath. McCafferty scored a twenty–two out of a possible score of forty. According to Dr. Price and Dr. Arambula, McCafferty's score did not indicate that he is a psychopath.

Dr. Price testified that the Static-99R test is used to assess whether a sex offender is likely to reoffend. McCafferty scored a four on this test which indicated that he has an above average risk of reoffending. However, Dr. Price believes that McCafferty's actual risk of reoffending is higher because the test does not account for sex offenses that McCafferty might have committed that were not reported, investigated, or for which he was not caught.

Based upon their education, training, experience, and methodology, it was the opinion of both doctors to a reasonable degree of certainty that McCafferty suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence as defined by the Texas Health and Safety Code.

---

[3]Dr. Arambula, a psychiatrist, does not score psychological tests. He did, however, review and rely upon the tests performed by Dr. Price as a part of his analysis.

**B.    McCafferty's testimony**

At the time of the civil-commitment trial, McCafferty testified that he was serving time in prison for indecency with a child by sexual contact relating to the 2012 offense at CVS. McCafferty also admitted that he was previously imprisoned for sexual assault. Further, McCafferty testified that he has convictions for driving while intoxicated, possession of amphetamines, and criminal mischief. McCaffery acknowledged that he has used a variety of illegal drugs including marijuana, amphetamines, methamphetamines, and cocaine and that while he was in his twenties, he had a drug and alcohol problem.

During his testimony, McCafferty discussed his convictions for his sexual offenses. As to his 1990 conviction for the sexual assault of the woman at the tanning salon, McCafferty denied committing the offense and stated that he was not even present at the tanning salon on the day of the sexual assault.[4]

While out on bond for the sexual assault that occurred at the tanning salon, and while on probation for a drug offense, McCafferty was charged with committing the offense of solicitation of a child. McCafferty did not deny that he had solicited a thirteen-year-old boy for sex but stated that he believed the teenaged boy was an adult.

---

[4]During his interview with Dr. Arambula, however, McCafferty admitted that he was at the tanning salon on the day of the offense, but claimed that he only passed the woman on the stairs; he denied touching the woman.

McCafferty pled guilty to the solicitation of a child charge and to the tanning salon and was sentenced to time in prison.

After McCafferty was paroled, he was ordered to attend sex-offender treatment classes for a period of two years. McCafferty testified that he did indeed attend group sex-offender treatment classes once a week for a period of two years. McCafferty referred to the group as the "denier's group" because every member of the group, including himself, denied that he had committed any sexual offense. McCafferty said that the group did not "dwell on a lot of sexual issues."

McCafferty also discussed his third sexual offense conviction—the CVS incident which occurred in 2012 while he was registered as a sex offender. According to McCafferty, on the day of the offense, while shopping at a CVS store he lost his balance and bumped into a boy who was standing near him. McCafferty stated that he bumped into the boy because he was "unsteady on [his] feet." Shortly after, the boy's mother approached McCafferty in the store and asked him why he had touched her son. McCafferty testified that even though the boy claimed that he had touched his genitals—"it didn't happen." McCafferty subsequently pled guilty to engaging in sexual contact by touching the genitals of a child younger than seventeen years old and was sentenced to seven years in prison.

As McCafferty discussed each of his convictions, the State introduced, and the trial court admitted, the judgments of the convictions.

McCafferty further testified that he is gay but that he has never been sexually attracted to teenage boys; he does not believe that he has any type of sexual problem. Nor does he believe that he needs treatment as a sex offender although he feels that "self-help-type" counseling "wouldn't hurt anyone." Finally, McCafferty testified that he does not believe that there is any risk that he will ever commit another sexual offense.

## III.  SUFFICIENCY OF THE EVIDENCE

In his second and third issues, McCafferty argues that the evidence is legally and factually insufficient to support the "behavioral abnormality" element of the State's case. In his fourth issue, McCafferty claims that the evidence is legally insufficient to support the "repeat sexually violent offender" element of the State's case. Because we will hold that the evidence is legally and factually sufficient, we will overrule McCafferty's second, third, and fourth issues.[5]

### A.  Standards of Review & Applicable Law

#### 1.  Law pertaining to civil commitment

As a starting point, we note that to civilly commit a person, the State carries the burden to prove its case beyond a reasonable doubt and must show that "the person: (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality

---

[5]When a party presents multiple grounds for reversal of a judgment on appeal, as McCafferty has done here, the appellate court should first address those points or issues that would afford the party the greatest relief. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000); *In re K.W.*, 138 S.W.3d 420, 428 (Tex. App.—Fort Worth 2004, pet. denied). Accordingly, we first address McCafferty's sufficiency challenges.

13

that makes him likely to engage in a predatory act of sexual violence." *See* Tex. Health & Safety Code Ann. §§ 841.003(a) ("Sexually Violent Predator"), .062(a).

A person is a repeat sexually violent offender if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. *Id.* § 841.003(b). The statute defines "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

### 2. Legal sufficiency standard of review

We review sexually violent predator civil commitment proceedings for legal sufficiency of the evidence using that appellate standard of review applied in criminal cases. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the statutory elements required for commitment beyond a reasonable doubt. *Id.*

### 3. Factual sufficiency standard of review

The Texas Supreme Court most recently clarified the standard governing a factual sufficiency review in cases brought under the SVP Act where the burden of proof is beyond a reasonable doubt. *In re Commitment of Stoddard*, 619 S.W.3d 665, 668, 675–78 (Tex. 2020). When reviewing the factual sufficiency of the evidence to support a civil commitment order, we determine whether, in light of the entire record, the

14

disputed evidence a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. *Id.* at 674–75. Further, in reversing for factual insufficiency, the appellate court must detail why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding.[6] *Id.* at 677.

## B. The Evidence is Legally and Factually Sufficient to Support the Jury's Finding that McCafferty Suffers from a Behavioral Abnormality.

McCafferty makes several arguments to support his claim that the evidence is insufficient to prove that he suffers from a behavioral abnormality. Initially, McCafferty claims that the State failed to prove that he committed the 1990 sexual assault on the woman at the tanning salon and that because the experts relied on that conviction in forming their opinion that he suffers from a behavioral abnormality—their opinion is conclusory.

McCafferty argues: "Neither Mr. McCafferty's no contest plea nor the judgment in the March 1990 case prove in this civil-commitment case that Mr. McCafferty committed the sexual-assault alleged in the indictment in the March 1990 case."

---

[6]The State urges us to abandon our factual sufficiency reviews in SVP cases, following in the steps of the criminal case *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The Supreme Court, however, made it clear that the "right of courts of appeals to review [SVP cases] for factual insufficiency . . . must continue undisturbed." *Stoddard*, 619 S.W.3d at 676 (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986)).

McCafferty cites to Texas Code of Criminal Procedure Article 27.02(5) as support for this claim. Article 27.02(5) states that a nolo contendere plea has the same effect as a plea of guilty, "except that such plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." Tex. Code Crim. Proc. Art. 27.02(5). However, the Texas Code of Criminal Procedure does not generally apply to a civil commitment case. *In re Commitment of Price*, No. 06-16-00077-CV, 2017 WL 2299141, at *2 (Tex. App.—Texarkana May 26, 2017, pet. denied) (mem. op). Section 841.146 of the Texas Health and Safety Code clarifies that "a civil commitment proceeding is subject to the rules of procedure and appeal for *civil* cases." Tex. Health & Safety Code Ann. § 841.146(a), (b) (emphasis added). Accordingly, we hold that Texas Code of Criminal Procedure Article 27.02(5) is not applicable to this case.[7]

The same result would occur were we to apply Rule 410—a rule applicable to civil cases. Rule of Evidence 410 provides that evidence of a defendant's prior nolo contendere plea is not admissible against the defendant in a civil case. *See* Tex. R. Evid.

---

[7]Moreover, Texas Code of Criminal Procedure article 27.02(5) recites that a plea of nolo contendere "may not be used against the defendant as an *admission* in any civil suit based upon or growing out of the act upon which the criminal prosecution is based." Tex. Code Crim. Proc. Ann. art. 27.02(5) (emphasis added). The State did not attempt to use McCafferty's 1990 conviction as an admission against him—the State only introduced the conviction to show that McCafferty had been convicted of a sexual offense.

410(a)(2). However, Section 841.003(b)(1) provides that a person is a repeat sexually violent offender for purposes of chapter 841 if the person

> (A) is convicted of a sexually violent offense, regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the person was subsequently discharged from community supervision; (B) enters a plea of guilty or nolo contendere for a sexually violent offense in return for a grant of deferred adjudication; or, . . . .

Tex. Health & Safety Code Ann. § 841.003(b)(1). Here, the record reflects that McCafferty pleaded nolo contendere to the charge of sexual assault and he was convicted and sentenced to two years-probation, to be served concurrently with a probation revocation from another offense. In *Price*, the court held that because Section 841.003 placed the issue of whether Price was a sexually violent predator before the jury thus requiring admission of evidence on the issue, the trial court did not abuse its discretion by admitting into evidence the defendant's prior conviction based on a no contest plea, notwithstanding the potential for conflict between Rule 410 and Chapter 841. *See Price*, 2017 WL 2299141, at *2–3. We agree with *Price* that Rule 410 is not intended to prevent the State from proceeding under a statute such as this one, that imposes civil consequences from criminal convictions. *Id.*

Indeed, it would be truly anomalous for the admission of such evidence to not be an abuse of discretion but for such evidence, when admitted, not to amount to some evidence in a sufficiency of the evidence review. We reject McCafferty's argument and hold that McCafferty's nolo contendere plea and conviction of sexual assault to be evidence of his status as a repeat sexually violent offender.

17

Additionally, to the extent that McCafferty argues that the State was required to prove the underlying facts of the 1990 sexual assault conviction, he is incorrect. The State was not required to prove the facts upon which that conviction rests; the State was only required to prove that McCafferty was convicted of more than one sexually violent offense and that a sentence was imposed for at least one of the offenses. Tex. Health & Safety Code Ann. § 841.003(b). Here, the State introduced evidence proving that McCafferty was convicted of the 1990 sexual assault and that he received a sentence of two years for that offense.[8] Even if there was evidence at McCafferty's civil commitment proceeding showing that he did not commit the 1990 sexual assault, it is undisputed that he was *convicted* of committing sexual assault. McCafferty cannot collaterally attack the 1990 conviction in this proceeding. *See In re Commitment of Black*, 522 S.W.3d 2, 5 (Tex. App.—San Antonio 2017, pet. denied) (holding that the defendant in a civil commitment proceeding under chapter 841 "cannot collaterally attack the criminal conviction in the commitment proceeding") (quoting *In re Commitment of Eeds*, 254 S.W.3d 555, 558 (Tex. App.—Beaumont 2008, no pet.)).

Moreover, the record reflects that in arriving at their conclusion that McCafferty suffers from a behavioral abnormality, the experts relied on many other facts besides his 1990 sexual assault conviction. The doctors reviewed and relied upon McCafferty's

---

[8]McCafferty concedes that his "no contest plea in the March 1990 case legally establishes that [he] was convicted of the sexual-assault offense alleged in the indictment in the case."

18

criminal records, their respective interviews with McCafferty, and the results of the psychological tests that Dr. Price administered to McCafferty. And, McCafferty's 1990 sexual assault conviction was one of only *three* sexual offenses that the experts considered while conducting their evaluation of McCafferty. The experts' opinion that McCafferty suffers from a behavioral abnormality is not conclusory simply because they relied partly on his 1990 sexual assault conviction in making their determination. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012) (holding "testimony is speculative if it is based on guesswork or conjecture"); *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 816–17 (Tex. 2009) ("Opinion testimony that is conclusory or speculative is not relevant evidence.") (quoting *Coastal Transp. Co. v. Crown Cent. Petrol. Corp.*, 136 S.W.3d 227, 232 (Tex. 2004)).

McCafferty next asserts that the evidence is insufficient to support the jury's finding that he suffers from a behavioral abnormality because the evidence shows that he is not a psychopath. A person's psychopathy, however, is not a requisite finding that must be made in support of the person's commitment as a sexually violent predator. *See In re Commitment of H.L.T.*, 549 S.W.3d 656, 660 (Tex. App.—Waco 2017, pet. denied) ("The only part of the SVP statute that calls for psychopathy testing is [S]ection 841.023(a), which applies only to the expert retained to assist TDCJ in its determination of whether to refer the person to the attorney for the State.").

McCafferty also claims that the evidence is insufficient to support the jury's finding that he suffers from a behavioral abnormality because it demonstrates that he

is "no more dangerous now than he was before when he was able to control himself from committing sex offenses 99.9998% of his 33-year, free-world, adult life." This Court recently rejected a similar prevalence of ordinary conduct argument. *See In re Commitment of Woods*, 02-19-00155-CV, 2020 WL 3969958, at *8 (Tex. App. —Fort Worth June 11, 2020, pet. denied) (mem. op.) (holding that the prevalence of ordinary conduct is of limited value in these cases and that the question in civil commitment cases is whether there are sufficient indicia that the individual has a condition causing predisposition toward violent sexual conduct—that is, whether the individual has a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence). Moreover, there is no numeric value that can be used to determine whether an offender is "likely" to reoffend. *See In re Commitment of Manuel*, No. 01-18-00650-CV, 2019 WL 2458986, at *5 (Tex. App.—Houston [1st Dist.] June 13, 2019, pet. denied) (mem. op.) ("[T]here is no numeric value or label that can be used to determine whether an offender is 'likely' to reoffend."); *see also In re Commitment of Riojas*, No. 04-17-00082-CV, 2017 WL 4938818, at *4 (Tex. App.—San Antonio Nov. 1, 2017, no pet.) (mem. op.) ("[T]he term 'likely to engage' as used in the statute does not require an expert to find a specific percentage of risk . . ."); *In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.—Beaumont 2012, pet. denied) ("Chapter 841 . . . does not require a numerical or percentage statement of whether a person is 'likely' to reoffend.").

Additionally, we note that the last time McCafferty was in the free world—after having received two years of sex-offender treatment, having served time in prison for another

20

sexual offense, and having registered as a sex offender—he groped a young boy in the middle of a CVS store multiple times. As in *Woods*, "the prevalence of ordinary conduct is of limited value" in this case. *Woods*, 2020 WL 3969958, at \*8.

Finally, McCafferty claims that the plea-bargain deal he received from the State demonstrates that he is not "dangerous" but a typical recidivist who should not be civilly committed. The record contains no evidence of the reason for the length of McCafferty's sentence for his third sexual offense. Any suggestion that the sentence was based on his lack of "dangerousness" or any other reason would be speculative. Such speculation is not evidence and will not be considered by this Court. Moreover, absent expert testimony to the contrary, the length of an offender's sentences and the alleged "dangerousness" of the underlying offenses "are not relevant to whether the defendant meets the statutory definition of sexually violent predator." *In re Commitment of Joiner*, No. 05-18-01001-CV, 2019 WL 4126602, at \*9 (Tex. App.—Dallas Aug. 30, 2019, pet. denied) (mem. op.). The record in this case contains no expert testimony that would make such a consideration relevant.

After considering the evidence presented to the jury in the light most favorable to the verdict, we hold that a rational trier of fact could find that McCafferty has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.003(a); *Short*, 521 S.W.3d at 919. We also conclude the evidence is factually sufficient to support the trial court's finding; here, there is no disputed evidence a reasonable factfinder could not have credited in

favor of the finding that McCafferty suffers from a behavioral abnormality, and there are no undisputed facts contrary to the finding. *See Stoddard*, 619 S.W.3d at 668, 675–78. We overrule McCafferty's second and third issues.

**B.      The Evidence is Legally Sufficient to Support the Jury's Finding that McCafferty is a Repeat Sexually Violent Offender.**

In his fourth issue, McCafferty claims that the evidence is legally insufficient to prove that he is a repeat sexually violent offender. McCafferty again argues that Texas Code of Criminal Procedure article 27.02(5) prohibits the State from using his sexual assault conviction as proof in this civil commitment proceeding because he pled nolo contendere to that charge. We rejected this claim when we addressed McCafferty's second and third issues, and for the same reasons, we reject it again now.

Moreover, the record reflects that the State presented legally sufficient evidence to prove that McCafferty is a repeat sexually violent offender. A person is a repeat sexually violent offender if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. Tex. Health & Safety Code Ann. § 841.003(b). McCafferty testified without objection that he was convicted for sexual assault and indecency with a child by contact. Sexual assault and indecency with a child by sexual contact are both sexually violent offenses. *See id.* § 841.002(8)(A); Tex. Penal Code Ann. §§ 21.11(a)(1), 22.011. Additionally, McCafferty was sentenced to prison for each conviction. Therefore, after considering the evidence presented to the jury in the light most favorable to the verdict, we hold that a rational trier of fact

22

could find that McCafferty is a repeat sexually violent offender. *See* Tex. Health & Safety Code Ann. § 841.003(b). We overrule McCafferty's fourth issue.

## IV. LIMITATION OF CROSS-EXAMINATION

In his first issue, McCafferty claims that the trial court committed error when it restricted his cross-examination of Dr. Arambula. The trial court's decision with respect to Dr. Arambula was based on the State's argument that McCafferty could not re-litigate the issues that led to McCafferty's prior conviction for sexual assault.

### A. Standard of Review

In reviewing a trial court's decision to admit evidence, we utilize an abuse of discretion standard. *See In re J.F.C.*, 96 S.W.3d 256, 285 (Tex. 2002); *Nat'l Liab. and Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

### B. Exclusion of testimony

During his cross-examination of Dr. Arambula, McCafferty asked the doctor a series of questions regarding the underlying facts of his sexual assault conviction. The thrust of McCafferty's cross-examination of Dr. Arambula was his attempt to prove that he was actually innocent of the sexual assault charge to which he pled nolo contendere. The State objected that McCafferty's line of questioning was irrelevant and an improper collateral attack on McCafferty's 1990 sexual assault conviction. After

23

McCafferty made an offer of proof, the trial court ruled that he could question the doctor with respect to the records that he reviewed and how they affected his opinion but that he could not attempt to relitigate the case or collaterally attack the conviction. McCafferty claims that the trial court erred in prohibiting him from questioning Dr. Arambula about the underlying facts of the sexual assault because the doctor's opinion that he has a behavioral abnormality was "critically based on him having committed [the] March 1990 offense."

We conclude, however, that the trial court did not abuse its discretion in restricting the cross-examination. In this case, the question the jury was required to decide was whether McCafferty is a repeat sexually violent offender who presently suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. *See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a), 841.062(a). It was reasonable for the trial court to conclude that McCafferty's proposed questions did not address whether McCafferty presently has a behavioral abnormality that makes him likely to reoffend. Stated another way, the questions McCafferty was not allowed to ask do not address a fact of consequence that would have made Dr. Arambula's prognosis more or less probable. *See generally* Tex. R. Evid. 401 (stating that relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence); Tex. R. Evid. 402 (reciting that evidence which is not relevant is inadmissible).

24

Moreover, McCafferty cannot challenge the facts of his final criminal conviction for sexual assault in his civil commitment proceeding. *See In re Commitment of Dees*, No. 09-11-00036-CV, 2011 WL 6229555, at *5 (Tex. App.—Beaumont Dec. 15, 2011, pet. denied) (mem. op.); *In re Commitment of Hinkle*, No. 09-09-00548-CV, 2011 WL 2420884, at *5–6 (Tex. App.—Beaumont June 16, 2011, pet. denied) (mem. op.); *see Eeds*, 254 S.W.3d at 557–58 (holding that defendant in SVP proceeding could not attack accuracy of statement in criminal judgment that conviction was for indecency by contact, where that judgment had not been reversed, corrected, or set aside). McCafferty testified without objection that he was convicted for sexual assault and indecency with a child by contact. Additionally, McCafferty was sentenced to prison time for each conviction. And the judgment for the sexual assault convictions (showing he pled guilty to the offense) was admitted at trial without objection. The conviction for sexual assault is final and has not been set aside. *See Eeds*, 254 S.W.3d at 557–58.

Under the circumstances, the trial court could reasonably conclude that any subjective feelings that Dr. Arambula might have had concerning his level of comfort with the conviction in McCafferty's sexual assault case was not a fact of consequence as it relates to McCafferty's SVP case. *See Hinkle*, 2011 WL 2420884, at *6 (concluding that whether the appellant was wrongfully convicted in an underlying case had not been decided in that case and was not relevant to the civil commitment case); Tex. R. Evid. 401. Because the trial court did not abuse its discretion in restricting McCafferty's cross-examination of Dr. Arambula, we overrule McCafferty's first issue.

## V.    CONCLUSION

Having overruled McCafferty's four issues, we affirm the trial court's order of civil commitment.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  June 24, 2021