

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

———————————

No. 07-20-00039-CV

———————————

## IN RE: THE COMMITMENT OF ANTHONY BERNARD WILEY

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. 186,685-C; Honorable Charles Barnard, Presiding

August 11, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Chapter 481 of the Texas Health and Safety Code, known as the Texas Civil Commitment of Sexually Violent Predators Act,[1] addresses a civil commitment procedure for long-term supervision and treatment of a "small but extremely dangerous group of sexually violent predators" who suffer from a behavioral abnormality deemed to be a threat to society. TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2017). Following a

---

[1] TEX. HEALTH & SAFETY CODE ANN. §§ 841.001-.151 (West 2017 & Supp. 2020).

jury trial, Appellant, Anthony Bernard Wiley, was found to be a "sexually violent predator." Pursuant to that finding, the trial court entered an *Order of Commitment* providing that following Wiley's release from any facility of the Texas Department of Criminal Justice, he be transported to an approved Texas residential facility for sex offender treatment.

Wiley challenges the trial court's commitment order by four issues.[2] His first two issues challenge the legal and factual sufficiency of the evidence to support the "repeat sexually violent offender" element of the State's case. By his third issue, he presents a double jeopardy issue for his 1995 convictions asserting they arose from the same criminal offense, yet resulted in multiple punishments. By his fourth and final issue, he asserts the State's expert witness's opinion was based on an incorrect definition of the term "behavioral abnormality." After the State filed its original brief, Wiley filed a reply brief reiterating his arguments on the sufficiency of the evidence and his double jeopardy issue. We affirm.

### BACKGROUND

Wiley was born and raised in Dallas and has many siblings. His criminal history began at age ten. At a young age, he was sent to live with an aunt and uncle in St. Louis. According to Wiley, he was sexually abused by his uncle. Wiley admitted that while he was living with his relatives, he sexually abused a cousin who was mentally challenged

---

[2] Originally appealed to the Second Court of Appeals, sitting in Fort Worth, this appeal was transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Second Court of Appeals and this court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

and his aunt sent him to live in a state-run facility where he resided until he was eighteen. His first offense as an adult occurred at age nineteen.

While in his twenties, in 1995, Wiley was charged with two sexual offenses. He pleaded guilty to both and was convicted for aggravated sexual assault with a knife and for burglary of a habitation with intent to commit aggravated sexual assault with a knife. His victim was a sixty-eight-year-old woman. Both offenses are defined in the Texas Health and Safety Code as sexually violent offenses. *See* § 841.002(8)(A) (aggravated sexual assault under section 22.021 of the Texas Penal Code); § 841.002(8)(C) (burglary of a habitation with intent to commit aggravated sexual assault under section 30.002 of the Texas Penal Code). Wiley's anticipated discharge date from prison was on or about April 16, 2018.[3]

In anticipation of Wiley's release from prison, in July 2017, the State of Texas filed its original petition seeking to have Wiley declared a sexually violent predator and have him committed for treatment and supervision pursuant to chapter 841 of the Code.[4] Wiley responded with a general denial and numerous affirmative defenses.

---

[3] Wiley's 1995 convictions for sexual offenses required him to register as a sex offender after his release from prison. TEX. CODE CRIM. PROC. ANN. arts. 62.001-.408 (West 2018 and Supp. 2020). He improperly registered in Dallas and then moved to St. Louis to live with one of his brothers. He registered in St. Louis but realized that his brother's home was near a school and his sex offender status prevented him from living there. Wiley then moved to Nebraska and registered there as a sex offender. Texas issued a warrant for Wiley for violating sex offender registration requirements and he was arrested.

[4] Wiley previously appealed the order of civil commitment. His appeal was transferred from the Second Court of Appeals to the Sixth Court of Appeals, sitting in Texarkana, and he prevailed on a *voir dire* issue. *See In re Commitment of Wiley*, No. 06-18-00056-CV, 2019 Tex. App. LEXIS 896, at *8-9 (Tex. App.—Texarkana Feb. 8, 2019, no pet.) (mem. op.). Following a new trial, the trial court again ordered that Wiley be committed as a sexually violent predator. This is the appeal from the second trial.

The underlying case was tried to a jury and the only two witnesses to testify were Wiley and Dr. Jason Dunham, a forensic psychologist. Wiley's testimony can be summarized as his having a very troubled childhood and failure to accept responsibility for his criminal conduct. He denies that he committed the two 1995 offenses that resulted in his convictions for which the State seeks to have him committed. Dr. Dunham's testimony focused on his interview with Wiley and an evaluation of thousands of pages of records. He opined that Wiley suffers from a behavioral abnormality based on his risk factors of sexual deviance and antisocial behavior (criminal misconduct).

After both sides rested, the State moved for a partial directed verdict on the issue of whether Wiley was a sexually violent predator based on his testimony and the penitentiary packets introduced into evidence.[5] The trial court granted the State's motion. The only issue remaining for the jury to decide was whether Wiley suffers from a behavioral abnormality affecting his emotional or volitional capacity with a predisposition to commit a sexually violent offense to the extent that he becomes a menace to the health and safety of another person.

The court's charge instructed the jury on the definitions of "sexually violent predator," "repeat sexually violent offender," "behavioral abnormality," "predatory act," and included the statutory list of "sexually violent offenses." The only question presented to the jury was "Do you find beyond a reasonable doubt that [Wiley] is a sexually violent

---

[5] When there is undisputed evidence establishing that a defendant has been convicted of more than one sexually violent offense and a sentence was imposed for one of those offenses, a person's status as a sexually violent offender is a legal determination appropriate for a partial directed verdict. *See In re Commitment of Perdue*, 530 S.W.3d 750, 754 (Tex. App.—Fort Worth 2017, pet. denied).

predator?" The jury answered affirmatively, and the trial court entered an *Order of Commitment* based on the jury's answer.

### APPLICABLE LAW

The procedure for a civil commitment requires the State to provide notice to a defendant who is nearing the end of a sentence for a sexually violent offense and who may be a repeat sexually violent offender before filing a petition alleging sexually violent predator status. §§ 841.021, 841.041. For the State to obtain a civil commitment, it must show that a person is a sexually violent predator. § 841.003(a).

By statutory definition, a person is a sexually violent predator if he (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id*. A "behavioral abnormality" is statutorily defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." § 841.002(2). The State's burden of proof in a civil commitment proceeding is proof beyond a reasonable doubt. § 841.062(a).

### ISSUES ONE AND TWO—SUFFICIENCY OF THE EVIDENCE

Review of the legal sufficiency of the evidence in a civil commitment proceeding under the Sexually Violent Predators Act incorporates the "beyond a reasonable doubt" burden of proof usually reserved for criminal cases. *In re Commitment of Fisher*, 164 S.W.3d 637, 639-41 (Tex. 2005). When conducting a legal sufficiency review of a challenge to the evidence in a sexually violent predator case, we assess all the evidence

5

in the light most favorable to the verdict to determine whether a rational trier of fact could find, beyond a reasonable doubt, each of the elements the State was required to prove to support a civil commitment order. *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.).

The standard for reviewing factual sufficiency of the evidence in a civil commitment case was recently clarified in *In re Commitment of Stoddard*, No. 19-0561, 2020 Tex. LEXIS 1154, at *16-17 (Tex. Dec. 18, 2020). "The appellate standard governing a factual-sufficiency review of a finding that a person is a sexually violent predator is whether, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the verdict, along with undisputed facts contrary to the verdict, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at *26-27. In that case, the State urged the Court to abolish factual sufficiency review in civil cases as the Court of Criminal Appeals had done in criminal appeals in *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Disagreeing with the State, the Texas Supreme Court saw no reason to treat sexually violent predator cases differently from other civil cases and held that the "right of courts of appeals to review for factual insufficiency" under the current standard "must continue undisturbed." *In re Commitment of Stoddard*, 2020 Tex. LEXIS 1154, at *15, *21 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986)). In reversing a finding for factually insufficient evidence, an appellate court is "required to explain why the evidence that the jury *could not reasonably have credited* in favor of the finding was so significant that the jury could not have found beyond a reasonable doubt" that the defendant suffered from the requisite behavioral abnormality that made him likely to engage in a predatory

6

act of sexual violence. *In re Commitment of Stoddard*, 2020 Tex. LEXIS 1154, at *24. (Emphasis in original).

### ANALYSIS

By his first and second issues, Wiley challenges the legal and factual sufficiency of the evidence on whether the State proved under the appropriate standards of review that he is a repeat sexually violent offender. The State argues that Wiley failed to preserve his sufficiency claims by not raising them in the trial court. Wiley filed a motion for new trial alleging the evidence was legally and factually insufficient to show beyond a reasonable doubt that:

(1) he is a sexually violent predator as defined by the statute;
(2) he has serious difficulty controlling his behavior; and
(3) he suffers from a behavioral abnormality.

We note that difficulty in controlling one's behavior is not an element of the sexually violent predator statute. *See* § 841.003.

Such a general challenge in a motion for new trial to the legal and factual sufficiency of the evidence has been found sufficient to preserve the issue for appellate review.[6] *See In re Commitment of Eddings*, No. 02-19-00290-CV, 2020 Tex. App. LEXIS 4969, at *40 n.5 (Tex. App.—Fort Worth July 2, 2020, pet. denied) (mem. op.). Disagreeing with the State's argument, we conclude Wiley's sufficiency challenges were properly preserved and are appropriately before this court.

---

[6] *Cf.* TEX. R. APP. P. 33.1(d) (providing that in a civil nonjury trial, complaints regarding the legal and factual sufficiency of the evidence "may be made for the first time on appeal in the complaining party's brief").

To prove its case, the State was required to show beyond a reasonable doubt that Wiley is (1) a repeat sexually violent offender and (2) that he suffers from a behavioral abnormality.[7]  During a pretrial hearing, the State introduced a penitentiary packet authenticated by an affidavit from the custodian of records with the Texas Department of Criminal Justice.  In addition to other convictions, the documentary evidence included judgments from Wiley's 1995 plea-bargained convictions for aggravated sexual assault with a knife and for burglary of a habitation with intent to commit aggravated sexual assault with a knife.  Both offenses carried a sentence of twenty-five years.  Thus, the evidence established that Wiley was "convicted of more than one sexually violent offense and a sentence [was] imposed for at least one of the offenses."  § 841.003(b).  The evidence was introduced without objection and shows beyond a reasonable doubt that Wiley is a repeat sexually violent offender for purposes of chapter 841 of the Texas Health and Safety Code.

Additionally, during direct examination, Wiley was asked whether he had two convictions for sexual offenses.  He replied affirmatively and confirmed that his convictions were for aggravated sexual assault and burglary of a habitation with intent to commit aggravated sexual assault.  He also confirmed that he served concurrent twenty-five-year sentences.

Contrary to the evidence, Wiley testified that although he pleaded guilty to the offenses, his friend had committed the sexual assault and he merely stole from the victim

---

[7] Wiley does not present a challenge to the sufficiency of the evidence supporting a finding that he has a behavioral abnormality.  Rather, by his fourth issue, he challenges the definition of "behavioral abnormality" which will be addressed separately.

and "used" her vehicle. He denied having any involvement with the sexual assault. No other person was ever arrested for the offenses to which Wiley pleaded guilty and his DNA was found where the sexual assault occurred.

We conclude the State proved its case beyond a reasonable doubt and Wiley's challenges to both the legal and factually sufficiency of the evidence on appeal fail. Issues one and two are overruled.

### ISSUE THREE—DOUBLE JEOPARDY CLAIM

Wiley asserts that his 1995 convictions arose from the same incident and resulted in multiple punishments. Wiley correctly points out that a double-jeopardy claim that is apparent on the face of the record may be raised for the first time on appeal. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). The State maintains, however, that a writ of habeas corpus under article 11.07 of the Texas Code of Criminal Procedure is the only way in which Wiley may now present his double jeopardy claim. We agree with the State.

#### ANALYSIS

In *In re Commitment of Eeds*, 254 S.W.3d 555, 557-58 (Tex. App.—Beaumont 2008, no pet.), Eeds was found to be a sexually violent predator and was ordered to be civilly committed. He challenged one of the sexually violent offenses as not being a proper predicate offense enumerated in section 841.002(8) of the Texas Health and Safety Code. In disagreeing with Eeds, the court noted that he could not collaterally attack the criminal conviction in the civil commitment proceeding. *See id.* at 558. *See also In re Commitment of Black*, 522 S.W.3d 2, 5 (Tex. App.—San Antonio 2017, pet.

9

denied) ("The defendant in a civil commitment proceeding under chapter 841 'cannot collaterally attack the criminal conviction in the commitment proceeding.'"); *In re Commitment of Shelton*, No. 02-19-00033-CV, 2020 Tex. App. LEXIS 1242, at *25-26 (Tex. App.—Fort Worth Feb. 13, 2020, no pet.) (mem. op.) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 371-72, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1991) (Kennedy, J. concurring) (noting potential "dangers inherent when a civil confinement law is used in conjunction with the criminal process")). We conclude that Wiley's double jeopardy complaint is not properly before us in reviewing a civil commitment order. Issue three is overruled.

### ISSUE FOUR—BEHAVIORAL ABNORMALITY

Wiley complains that the State's expert witness's opinion was based on an incorrect definition of the term "behavioral abnormality." The term is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." § 841.002(2). Wiley describes the definition as being "convoluted and inherently ambiguous" and implicitly including a component of "serious difficulty controlling behavior." The State again responds to Wiley's issue with a preservation of error argument. We agree with the State.

### ANALYSIS

During opening and closing arguments, Wiley's counsel read the statutory definition of "behavioral abnormality" to the jury. When Dr. Dunham offered his expert testimony, he also read the statutory definition to the jury and opined on the meaning of the term. Dr. Dunham testified extensively on his review of thousands of pages of records

10

to evaluate Wiley's conduct and diagnoses of sexual sadism, exhibitionism, antisocial behavior, and psychopathy. Based on his review, he opined that Wiley suffers from a behavioral abnormality.

The statutory definition of "behavioral abnormality" was included in the jury charge. At no time did Wiley object that an incorrect definition had been offered at any time during the proceedings nor in the charge. Now for the first time on appeal, he complains of the statutory definition. His untimely complaint results in procedural default. TEX. R. APP. P. 33.1(a)(1). Furthermore, even if his complaint had been properly preserved, we find no error in the definition used by the trial court. Issue four is overruled.

**CONCLUSION**

The trial court's *Order of Commitment* is affirmed.

Patrick A. Pirtle
Justice