**Opinion issued April 27, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00572-CV

———————————

## IN RE COMMITMENT OF LESTER G. TALLEY

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 513958**

---

## O P I N I O N

In this appeal from a civil commitment order, a jury unanimously found that Lester G. Talley is a sexually violent predator as defined in the Texas Health and Safety Code and therefore is subject to civil commitment. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.081–841.151. (West 2015). On appeal, Talley contends that the trial court erred in (1) denying Talley's challenges for cause to six venire members; (2) admitting Talley's written confession to rebut his testimony; and (3) directing a verdict that Talley is a person who has been

convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. Finding no error, we affirm.

## BACKGROUND

In September 2015, the State sued Talley in Harris County, seeking a determination that Talley is a sexually violent predator subject to civil commitment. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.081. Talley has four previous convictions in Texas for the aggravated sexual assault of multiple children, as well as convictions in Missouri for sexual assault and burglary. Talley admitted to the Texas sexual assault convictions in response to requests for admissions. Talley also admitted to his previous convictions during trial. Certified copies of the convictions were introduced into evidence.

During jury selection, some of the venire members vacillated when asked whether they could set aside any bias or prejudice after hearing evidence that a person was a pedophile. Counsel asked:

> [DEFENSE COUNSEL]: So, if you hear about sex offenses against children and a sexual attraction to children, I just need to know, would your feelings be so strong that you would not be able to base your decision off the evidence and the law presented in court? And if you could, just hold them up for me high.
>
> ****
>
> [DEFENSE COUNSEL]: So if you hear that someone has been diagnosed with pedophilia, would you be able to set aside any bias or prejudice, listen to the evidence and follow the law? Or would your

feelings be so strong you wouldn't be able to hear anything else, doesn't matter what the State has to prove, that's it, can't do it.

Venire members 5, 8, 11, 23, 24, and 26 responded affirmatively to Talley's disjunctive question by raising their hands. The State objected that the questions were improper commitment questions. The trial court then rephrased the question:

> THE COURT: Okay. The question really is can you listen to all the evidence and if you hear that somebody is a pedophile, not just use that to answer the question.

Venire members 5, 8, 11, 23, 24, and 26 did not continue with their affirmative response after the trial court rephrased the question. At the conclusion of jury selection, the trial court granted some challenges for cause to the venire and denied others:

> THE COURT: I'm just looking for your challenges.
>
> ****
>
> STATE: Okay. We have 2, 3, 4, 6, 10, 13, 16, 18, 19, 21—
>
> ****
>
> STATE: 28, 29, 31, 33, 34, 29, 46, 48, 54, 55
>
> ****
>
> STATE: 54, 55, 63, 66, 73, 76, 79
>
> ****
>
> [DEFENSE COUNSEL]: Okay. I think I'm ready. Should I do those in addition to the ones—I would be in agreement with—?

3

THE COURT: All those?

[DEFENSE COUNSEL]: Correct. But I have additional strikes as well.

THE COURT: Okay. Who are the additionals?

[DEFENSE COUNSEL]: I would say No. 5, No. 8, No. 11, No. 20, No. 23, 24, 26, 49, 50, 52, 56, 57, 58, 68, 71. Did we get 73? Did y'all say that one?

THE COURT: Yes.

[DEFENSE COUNSEL]: Okay. 75 and 78 and 80.

****

THE COURT: The next one I have is 52. 52 is granted. Then 56. 56 is denied. 57 is granted. Then we move on to 58. 58 is granted. Then 68. 68 is granted. 71 is granted. 75 is denied. 78 is granted and 80 is granted. Okay. Let's see where we are. Ok. I'm just going to go through them so we're all on the same page. Here's who's gone. 2, 3, 4, 6, 10, 13, 16, 18, 19, 21, 28, 29, 31, 33, 34, 39, 46, 48, 49, 52, 54, 55, 57, 58, 63, 66, 68, 71, 73, 76, 78, 79, and 80.

****

[DEFENSE COUNSEL]: I would request an additional ten peremptory strikes from my challenges for cause that were denied.

THE COURT: Ten?

[DEFENSE COUNSEL]: Uh-huh. Yes, ma'am.

THE COURT: That will be denied.

****

[DEFENSE COUNSEL]: Okay. So, but for my challenges for cause on Nos. 5, 8, 11, 20, 23, 24, 26, 50, 56 and 75, I will be forced to use

4

my peremptory challenges on them and I would have stricken Nos. 7 and 12, 17, 25, 27, 30, 32, 35, 36, 37. And now I'm handing my list to the clerk.

****

After the parties exercised their peremptory strikes, the trial court clerk seated the jury, which included defense counsel's objectionable jurors 17, 25, 27, 32, 36, and 37:

> THE COURT: Ladies and gentlemen, the clerk is going to call out the names of those of you who have been selected. . . .

> THE CLERK: Juror No. 9, [name]; Juror No. 14, [name]; Juror No. 17, [name]; Juror No. 25, [name]; Juror No. 27, [name]; Juror No. 32, [name]; Juror No. 36, [name]; Juror No. 37, [name]; Juror No 42, [name]; Juror No. 43, [name]; Juror No. 44, [name]; Juror No. 45, [name].

The case proceeded. During his testimony, Talley denied some of the facts underlying his crimes. The State then sought to introduce Talley's prior written confession to impeach his in-court denials of facts described in the confession. The State also proffered the confession to assist the jury in understanding the expert testimony of Dr. Sheri Gaines, who relied on Talley's description of his criminal episodes in forming her opinion as to whether Talley has a behavioral abnormality.

Talley objected to the introduction of the confession as unduly prejudicial. The trial court first allowed the statement for the purpose of refreshing Talley's memory. But when Talley persisted in denying the admissions contained in the

confession after reading it silently, the trial court permitted the State to read the confession into the evidence.

The jury found that Talley is a sexually violent predator.

## DISCUSSION

On appeal from the civil commitment order, Talley raises three challenges. First, he contends that the trial court erred in denying his challenges for cause to members of the venire who indicated in response to general questioning of the venire that they would not set aside any bias resulting from hearing evidence that Talley has been diagnosed with pedophilia or a sexual attraction to children. Second, Talley contends that the trial court erred in allowing his confession relating to his earlier convictions to be read aloud to the jury. Third, he contends that the trial court erred in directing a verdict as to the statutory requirement that the State show that he had been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses.

## I.     Jury Selection

### A.     Standard of Review and Applicable Law

A party may challenge a prospective juror for a disqualifying bias under Texas Rule of Civil Procedure 504.2:

> A party may challenge any juror for cause. A challenge for cause is an objection made to a juror alleging some fact, such as a bias or prejudice, that disqualifies the juror from serving in the case or that renders the juror unfit to sit on the jury.

6

TEX. R. CIV. P. 504.2.

The challenge alone, however, does not preserve for appellate review a complaint from the trial court's denial of a challenge for cause. Rather, to preserve error when the trial court denies a challenge for cause, the objecting party must use a peremptory challenge against the challenged venire member, exhaust any remaining challenges, and notify the trial court that a specific objectionable venire member will remain on the jury list. *Cortez*, 159 S.W.3d 87, 90–91 (Tex. 2005); *Hallett v. Houston Nw. Med. Ctr*., 689 S.W.2d 888, 890 (Tex. 1985).

We review rulings on challenges for cause to venire members for abuse of discretion, in light of the entire jury selection. *Cortez*, 159 S.W.3d at 92–93. A trial court abuses its discretion in denying a challenge for cause when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

"Bias, in its usual meaning, is an inclination toward one side of an issue . . . but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality." *Cortez*, 159 S.W.3d at 94. The relevant inquiry is not where jurors start but where they are likely to end—whether they can put any bias aside, follow the court's instructions, and render a verdict based on the evidence presented. *See id.* A juror's expression

that is subject to more than one interpretation, or a juror's equivocation or uncertainty about a potential bias, is not a ground for disqualification. *See Silsbee Hosp., Inc. v. George,* 163 S.W.3d 284, 295 (Tex. App.—Beaumont 2005, pet. denied); *Cortez*, 159 S.W.3d at 92–93.

**B.      Analysis**

At the outset, we note that Talley properly preserved his jury selection complaint for appellate review. After the trial court denied Talley's challenges for cause to certain venire members, Talley used his preemptory strikes to strike these members from the jury. He then identified venire members 7, 12, 17, 25, 27, 30, 32, 35, 36, 37 as objectionable jurors whom he would have struck from the panel had the trial court granted his challenges for cause. Because several of these objectionable venire members served on the jury, Talley has preserved this complaint for our review. *See Cortez*, 159 S.W.3d at 92–93.

Talley complains that the trial court erroneously denied his challenges for cause to venire members 5, 8, 11, 23, 24, 26, and 56. These jurors indicated that they would have a bias against a person who was diagnosed with pedophilia. Talley's diagnosis was a relevant fact, however, and would be introduced as evidence in the case. After the trial court instructed the jury about its obligation to listen to and consider all of the evidence, these venire members, save member 56, indicated that they could follow the trial court's instruction to consider all of the

8

evidence presented. The affirmative responses of these venire members to Talley's question thus did not indicate a disqualifying bias. *See Cortez ex rel. Estate of Puentes*, 159 S.W.3d at 94 (holding that venire members should not be disqualified for cause based on questions that seek "an opinion about the evidence"); *see also Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 752 (Tex. 2006) (explaining that in responding to questions about isolated facts, "jurors are unable to consider other relevant facts that might alter their responses, rendering their responses unreliable."). Accordingly, we hold that the trial court acted within its discretion in denying counsel's challenges for cause to these jurors.

After the court rephrased the question, venire member 56 was among those who indicated reservations.

> THE COURT: Anybody who that is—that is the end-all to be-all decision-making point? If you hear somebody's a pedophile, then they must have been convicted and that they—and that they have a behavioral abnormality as defined.
>
> ****
>
> [DEFENSE COUNSEL]: I've got 44, 45, 58, 63, 66, 47, 49, 52, 54, 55, 56, 57. Sorry. I went out of order. I saw numbers starting to drop.

Venire member 56, however, had responded to earlier questions that she could set aside any bias regarding her personal experiences and Talley's prior convictions and evaluate the evidence fairly. In determining whether a trial court abused its discretion, we examine the entire jury selection. *Cortez*, 159 S.W.3d at 92–93. The

9

parties did not further follow up with venire member 56 individually to determine whether she no longer could fairly consider the case. The trial court was in the best position to evaluate the venire member's answers and determine whether the juror could fairly consider the evidence presented. Because the record demonstrates that venire member 56 gave equivocal responses as to whether she harbored a disqualifying bias, we hold that the trial court acted within its discretion in denying Talley's challenge for cause. *See id.*

## II.     Admission of Evidence

Talley challenges the admission of his confession in a previous criminal case on the ground that its probative value is substantially outweighed by the risk of unfair prejudice. The State responds that the confession was admissible for impeachment purposes and as part of the underlying facts that its expert relied upon in forming her opinion testimony in the case.

### A.     Standard of Review and Applicable Law

We review evidentiary rulings using an abuse of discretion standard. *Harris Cty. v. Inter Nos, Ltd.*, 199 S.W.3d 363, 367 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Under Texas Rule of Evidence 705, an expert may disclose the underlying facts or data upon which the expert bases his or her opinion if it is of a type relied upon by experts in the field in forming opinions on the subject. *See* TEX. R. EVID.

10

705; *In re Commitment of Alvarado,* 09-13-00217-CV, 2014 WL 1285136, at \*11 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.). But the expert's disclosure of these facts and data is subject to the same relevancy constraints that govern the admission of other kinds of evidence. *See* TEX. R. EVID. 705(d) ("If the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect."); *see also* TEX. R. EVID. 403.

Evidence about the facts underlying previous sexual assaults is admissible in civil commitment cases when it assists the jury in understanding an expert's testimony that the person has a behavioral abnormality, which is the ultimate issue that the jury must determine. *In re Commitment of Stuteville*, 463 S.W.3d 543, 556 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("The trial court could have reasonably concluded that the facts and details related to Stuteville's offenses would be helpful to the jury in weighing his testimony and Dr. Clayton's testimony, and in explaining the basis for Dr. Clayton's opinion that Stuteville suffers from a behavioral abnormality."); *Alvarado,* 2014 WL 1285136, at \*11 ("The State's experts identified many risk factors for Alvarado to reoffend with a sexually violent offense, and the experts' explanation of the factors required information about the details surrounding the offenses. The State therefore could

11

establish a need for the basis evidence, and any tendency of the jury to give undue weight to the evidence was mitigated by the limiting instructions."); *In re Commitment of Day*, 342 S.W.3d 193, 199 (Tex. App.—Beaumont 2011, pet. denied); ("We hold the trial court acted within its discretion in allowing the experts to discuss the details of the offenses and other bad acts committed by Day that are contained in the records they reviewed.").

## B.    Analysis

Talley's confession contained his statements describing his previous offenses.  Dr. Sheri Gaines, the expert witness for the State, testified that she relied on the confession to form her opinion that Talley possessed a behavioral abnormality, together with Talley's other previous statements, police records, victim statements, medical records, and prison records.  Gaines concluded that Talley displayed the risk factors for a behavioral abnormality, given the number of victims, the gender and age range of victims, minimization or denial of details of his past offenses, and his assaults against multiple child victims at the same time. The facts and details contained in the confession were important to demonstrate the basis for Dr. Gaines's determination that Talley displayed sexually deviant behaviors, including that he had numerous child victims and had admitted to uncharged offenses and that he minimized or denied details of his offenses in his interview with her and at trial.

12

Talley challenged the veracity of the support for Dr. Gaines's opinion by denying some of the facts that Dr. Gaines relied upon in forming her opinion that Talley had a behavioral abnormality. Because the facts of the previous sexual assaults contained in the confession assisted the jury in understanding Gaines's expert testimony that Talley had a behavioral abnormality, and Talley placed the veracity of those facts at issue during the trial, the confession had probative value that the trial court reasonably could have concluded outweighed the risk of unfair prejudice. Accordingly, we hold that the trial court did not abuse its discretion in admitting it over Talley's objection. *See Alvarado,* 2014 WL 1285136, at \*11; *Day*, 342 S.W.3d at 199; ("We hold the trial court acted within its discretion in allowing the experts to discuss the details of the offenses and other bad acts committed by Day that are contained in the records they reviewed."); *Stuteville*, 463 S.W.3d at 556 ("Based on this record, the trial court could have reasonably concluded that the facts and details related to Stuteville's offenses would be helpful to the jury in weighing his testimony and Dr. Clayton's testimony, and in explaining the basis for Dr. Clayton's opinion that Stuteville suffers from a behavioral abnormality.").

## III. Directed Verdict

## A. Standard of Review and Applicable Law

Chapter 841 of the Health and Safety Code grants a defendant in a sexually violent predator case a right to a jury trial. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.061(b). A civil commitment proceeding is subject to the rules of procedure and appeal for civil cases. *See id.* § 841.146(b). When Chapter 841 and the rules of civil procedure conflict, the statutory provisions prevail. *Id.*

The Rules of Civil Procedure provide for a directed verdict. *See* TEX. R. CIV. P. 268. We review the grant of a directed verdict in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *See Qantel Bus. Sys., Inc. v. Custom Controls*, 761 S.W.2d 302, 303 (Tex. 1988); *Smith v. Radam, Inc.*, 51 S.W.3d 413, 417 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 476 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Partial directed verdicts are a mechanism for removing parts of a case from the factfinder. *See Johnson v. Swain*, 787 S.W.2d 36, 37 n.1 (Tex. 1989).

In a civil commitment proceeding under Chapter 841, the only fact issue for the jury to determine is whether the person has a behavioral abnormality. *In re Commitment of Bohannan*, 388 S.W.3d 296, 305 (Tex. 2012). Absent evidence that challenges the evidence that the defendant has been convicted of more than

14

one sexually violent offense and for which a sentence was imposed for one of them, a person's status as a sexually violent offender is a legal determination appropriate for partial directed verdict. *See In re Commitment of Scott,* No. 09-11-00555-CV, 2012 WL 5289333, at *2 (Tex. App. Oct. 25, 2012) (mem. op.) (there was no fact question for jury to decide with respect to status as a repeat sexually violent offender, thus "trial court did not err by granting a directed verdict on this element."); *In re Commitment of Martinez*, 09-12-00452-CV, 2013 WL 5874583, at *5 (Tex. App.—Beaumont Oct. 31, 2013, no pet.) (mem. op.) (same); *Alvarado*, 2014 WL 1285136, at *13 (same).

Texas Rule of Civil Procedure 198.3 provides that a matter admitted in response to a request for admission "is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission." *See* TEX. R. CIV. P. 198.3.

## B. Analysis

Talley does not contest that he is a repeat sexually violent offender, but relies upon section 841.062 to argue that each element of a determination that a person is a sexually violent predator must be reached by a jury verdict. He contends that the prohibition on directed verdicts against defendants in criminal cases carries over to civil commitment proceedings, and thus a jury must establish this fact whether or not it is contested. *See* TEX. HEALTH & SAFETY CODE ANN.

§ 841.062(a) (West 1999) ("The judge or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator."). The Texas Supreme Court, however, has rejected this reading of the statute. *See Bohannan*, 388 S.W.3d at 305 (holding that only fact issue to be resolved by the factfinder is whether a person has behavioral abnormality); *see also Scott,* 2012 WL 5289333, at *2 (holding that "[t]he existence of Scott's prior convictions and sentences for more than one sexually violent offense was conclusively established by the testimony . . . . Therefore, there was no fact question for the jury to decide with respect to Scott's status as a repeat sexually violent offender, and the trial court did not err in granting a directed verdict on this element.").

Talley admitted to multiple convictions of aggravated sexual assault of a child and to his corresponding prison sentences in response to the State's requests for admissions. He also admitted to these convictions and sentences at trial, and the State introduced the records establishing the convictions and sentences. Because Talley admitted to his repeat offender status in his pleadings, this element was conclusively established and not a contested issue for the jury to determine. *See* TEX. R. CIV. P. 198.3; *see also Bryant v. State*, 187 S.W.3d 397, 400 (Tex. Crim. App. 2005) (holding that stipulation to previous convictions was "a kind of judicial admission" that "ha[s] the effect of withdrawing a fact from issue and

16

dispensing wholly with the need for proof of the fact.") (citing John W. Strong, et al., 2 MᴄCᴏʀᴍɪᴄᴋ Oɴ Eᴠɪᴅᴇɴᴄᴇ § 255 (5th ed. 1999)).

Talley admitted his status as a repeat sexually violent offender. The State proffered evidence that supported Talley's admission. Accordingly, we hold that no fact question existed for the jury to decide as to Scott's status, and the trial court did not err by granting a directed verdict on this element. *See id*; *Bohannan*, 388 S.W.3d at 305; *Martinez*, 2013 WL 5874583, at *5; *Alvarado*, 2014 WL 1285136, at *13.

## CONCLUSION

We affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

Jennings, J., dissenting.

17